We have four cases this morning. The first is No. 18-1672, Swagway, LLC v. International Trade Commission. Mr. Sandel. Good morning, and may it please the Court. My name is Lawrence Sandel on behalf of Appellant Swagway, LLC. With my ten minutes of opening argument time, I first plan to address the Commission's erroneous legal finding of likelihood of confusion. Then I will address procedural issues regarding the Commission's unexplained denial of Swagway's pre-hearing consent order motion. And finally, I will explain the interplay between the Court's prospective ruling on each issue. The trademark inquiry of this appeal asks this Court to weigh the six factors assessed by the Commission below to arrive at a de novo finding, unlikely to confusion. Here, all parties seem to agree that the Court should consider the Commission's factual findings regarding six factors. Any one of these factors may control a particular case. And as I will explain, the actual confusion factor, and to a lesser extent, the relation in use and manner of marketing factor, should control under the unusual circumstances presented here. Your argument is they didn't weigh in your favor the lack of evidence of actual confusion, right? Well, we actually believe that that was weighted in our favor. It was a little bit the wording in the Commission's decision is a little bit difficult to parse, and it does say does not weigh four. But I believe, we believe, given that the, at least the Commission on Appeal noted that another factor was neutral. The language that does not weigh four actually suggests against. But it is part of our argument that that factor should go against, and additionally, that there should be an adverse inference brought because of the lack of scope. I'm sorry. I'm confused about what you're saying. Okay. The Commission concluded that there was no evidence of actual confusion. Correct. And is your contention that that factor, instead of being neutral, should have weighed in your favor? Is that what you're saying? That's correct. Yeah. And we believe that it does for several reasons. One is that there was, in this case, and also as proven by the evidence possessing it, there was an opportunity to show actual confusion. And that actually distinguishes a lot of the cases cited below. And, of course, that was proven that there was no actual confusion in this case. And additionally, we have this. Well, I don't know whether it was proven that there was no actual confusion because nobody, neither you nor the other side, conducted a survey. It's just that the evidence that the ALJ relied on wasn't sufficient to show actual confusion. All right. Well, I would just take issue with one point of that is the other side might have conducted a survey. We're unclear whether or not they did. It just wasn't submitted. And it wasn't a clear-cut determination there was no actual confusion. But the commission assessed the evidence presented. And based on the evidence presented from both sides, there, no actual confusion was found. And there was. No, I don't think they found no actual confusion. They found that the evidence wasn't sufficient to show actual confusion. Okay. I think that the evidence that was there did not show actual confusion. Meaning on that issue, it's neutral. So one thing that was throwing us a little bit about this, and the semantics are there, is that in the commission's appellate brief on pages, I believe, 31 and 32, they do recite that this factor does not weigh towards a likelihood of confusion. And they contrast that with another issue where they explicitly found it was neutral. So our contention is that below, they found that. You don't disagree with that statement. It certainly doesn't weigh in favor of. It certainly doesn't weigh in favor of. And I think we can all agree on that. So where exactly is your argument? Okay. So the argument is in several places. This is one of these cases, one of these unusual cases. Why is this case unusual? Well, one thing that makes this case unusual is that the factor for relation in use and commercial channels, that was found to weigh against the likelihood of confusion. And in all of the precedents cited against us where there was no actual confusion and there was no finding whatsoever on actual confusion and it went ahead towards a likelihood of confusion finding, that factor weighed towards likelihood of confusion. And in particular, the Midwestern case, which is cited in the very, in that quote, where it's recited that actual confusion is not necessary, that panel notes that the marketing channels factor went against the likelihood of confusion. The other thing that I believe distinguishes this case. But you don't disagree that actual confusion is not necessary, right? Yes. As a general principle, it's not needed. In cases where actual, where there exists opportunities for actual confusion, actual confusion evidence to exist. What does that mean, opportunities for? So a lot of the cases, including. Every time there's something similar in appearance, there's an opportunity. Well, I'd say in the Midwestern case, that case was a, dealt with a TTAB, appeal from TTAB, and that dealt with an intent to use trademark application. So that trademark wasn't in use. The new mark was not in real world use yet. So there actually was no opportunity for real world confusion. And indeed, in that case, the factor of actual confusion is not mentioned. What does that teach us about a case like this where you are actually in play and the product is there? I'm sorry, Your Honor? What does that case teach us about this circumstance? Well, I think it's distinguished on this exact circumstance. I think what it says is if there's no opportunity for actual confusion on one hand, and on the other hand, the marketing channels favor likelihood of confusion, then that's fine that there's no actual confusion and likelihood of confusion can result.  I don't think there was an opportunity to prove actual confusion. They were both in the market for one year, right? But over a quarter million of our clients' products were sold in that one year. And the Segway, the larger Segway product, had been in the market for quite a while. And turning towards, I really need to emphasize that market factor because although the names were similar and both were loosely related to transportation devices, one of them was extraordinarily more expensive than the other one, the Segway's product, and it was marketed as personal transporters, larger to adults, whereas my client's product was marketed as a toy for parents to buy for their teenagers and for teenagers to buy for themselves. The price discrepancy is not something that you emphasized or even mentioned in your brief. I'm sorry, Your Honor? The price discrepancy is something you didn't put any weight on in your brief. It was not emphasized as much. At all. I didn't see any strong argument at all in your brief that the price discrepancy alone should be enormously in your favor here. Well, the price discrepancy falls, as per the Commission's opinion, under that relation in use and manner of marketing factor. And that's where I see that falling in. And that factor we did discuss in our briefs. Whether or not we emphasize the price factor enough or at all is a slightly different matter there. Can we turn to the motion to terminate? If we were to read the ALJ's footnote about pending motions as denying your motion to terminate and that there was nothing wrong with addressing the motion in that way, it seems to me you are still arguing that the motion to terminate had to be addressed before the ALJ went along with the hearing, right? Not necessarily, Your Honor. The ALJ certainly would have preferred that the ALJ addressed it before the hearing and saved all those judicial resources there. You're not arguing that it was obligated to address it before the hearing? He was not obligated to address it before the hearing. Okay. Your Honor. Our main argument there is that the record is entirely devoid of reasoning. The ALJ did talk very briefly about it. Once the hearing was over with, wouldn't it be fair to read the denial of the motion as denying it because it was moved? Well, I don't think that that is proper, Your Honor. Because under the Alliantech case, you know, the commission is required to give an articulated rationale for why it was denied. And that footnote doesn't even, many of the footnotes, at least the one cited in the commission's brief and all the footnotes that they cite. What about the colloquy between the judge and presumably you at the time that he's denying it? Well, in that colloquy, if he denied it there, we'd be in a different situation. He expressly declined to rule on it in that colloquy. If you read it again, he specifically says, I'm not ruling on it before the hearing, which means he must rule on it later. And in such a ruling, he must give some articulated reasoning. The footnote where he denied it by default, presumably without really any consideration, it didn't even have that superficial recitation of mootness that that default footnote has in many commission opinions. If it did, we might have a slightly different situation. The other thing that's missing is an explanation of why the commission and the ALJ chose one side over the other. Because, in fact — So why does this matter? I'm a little puzzled about that. It didn't seem to me that the relief that was granted as part of the settlement is really any different from the relief that the commission ultimately granted in this respect. Well, the difference that we see moving forward is that the interveners have argued that there is res judicata effect from the commission's opinion, and there is a pending district court case. What case do they rely on for that argument? I'm sorry? Our case law is to the contrary. What case do they rely on to tell you that there's res judicata effect? I don't know that offhand, and I encourage you to — From time immemorial, our case law has been that there is no such — For patent cases, I know, but I think everyone's in agreement. For trademark cases, I believe the intervener's argument was that they made it below. And that is our fear. Why would it be different for patent and trademark cases? I'd rather not argue that it should be. We don't believe that it should be. But this is an argument that — So if it doesn't have any collateral estoppel, res judicata effect, why do you care? Is there any significance to this? Why was your consent order even promising more? Weren't you promised to destroy inventory? No, we were no longer — In your proposed — In the proposed consent order, I'm — I think you were saying you'd destroy inventory. And I believe at that point there wasn't any actually new inventory, and there wasn't inventory there. The reason that we actually hadn't provided that — That was a promise. Yeah, yeah. Destroy inventory there. I mean, we would be happy to be obligated by the consent order. But the consent order that the commission put down didn't require any destroying of inventory. I'm sorry, Your Honor? The order that the commission put on your back doesn't require any destroying of inventory. So why do you care? Assuming that there is no collateral estoppel effect, why do you care? What difference does it make? My belief — Off the top of my head, I do not think there's a difference. But if you'll allow me to end my time now and just think on that one minute during the commission's and the intervener's time, I can give you a final answer on that. Okay. All right. Thank you. Mr. Lieberman? Thank you. Good morning. May it please the Court, Michael Lieberman for the International Trade Commission. Your jurisdictional argument — I'm just speaking for myself — seems frivolous. Why is it not frivolous? I'm sorry? Your jurisdictional argument — Right. You make a jurisdictional argument. That's true. It seems to me it's frivolous that in district court interim rulings get included in the final judgment. Why wouldn't that be true here, too? Well, we believe that in this case it was the final appealable determination because for several reasons. One, the denial of the appellant's motion wasn't done on the merits. And to be appealable, the final decision should be an administrative — final administrative decision to exclude or to refuse to exclude articles under 337 specified sections. There's jurisdiction over the — they are appealing the exclusion order, right? Well, they're appealing — They're challenging the exclusion order. That's part of the appeal. Just let me finish. They're saying we don't like this exclusion order for two reasons. First, you made a mistake on likelihood of confusion. And second, you entered the wrong exclusion order. Well — You entered the wrong exclusion order. You should have entered the consent order. It's just an argument against the final order that the commission handed down for which there's clearly jurisdiction. I had the same reaction to your — to your jurisdictional argument that the presiding judge has. Their challenge on the consent order is just an argument — another argument for upsetting the final order, isn't it? Well — Yes or no? Yes or no? We didn't perceive it like that. We — I understand you didn't, but now you have an opportunity to see a little light. Isn't their challenge to the consent order issue just another ground for upsetting the final order? Well, we believe it wasn't done exactly that — like that. They — what they were arguing is that — What wasn't done exactly like that? Well, number one, we believe that the challenge to the jurisdiction is only with respect to the first portion of the argument, the one that relates to the denial of the consent order. As for the challenging the merits of the exclusion, we don't dispute that they have jurisdiction. That's number one. Number two, the way how they argue their case is a little bit different. They want first to address the issues — Is there a jurisdictional restriction on the kind of arguments you can make to challenge a final order? Well, they can do that, but the way how — No, but — The way how they do it is like this. They want first to address the issues relating to the denial of the motion for consent order. Before reaching the exclusion order, before reaching the merits of the final termination, they want to address this issue and then, just based on that, to decide the case, to send this case back to the commission, at least, and to avoid even dealing with the merits. It's unlike the oral argument. The oral argument is completely different from the brief. And so if we follow the brief, that's our reasonable, natural reaction to the — Assuming for purposes of argument that your jurisdictional argument was rejected by this court, what rationale did the commission use to deny the request for the consent order? Well, the rationale was the judge — Well, there were several considerations. One consideration was that the judge did not abuse his discretion by doing that. Commission rules specifically — By doing what? I'm sorry? He did not abuse his discretion by doing what? By denying this motion at the stage of final determination. The commission rule expressly provides to 1020 — Let's get exact about when and where was the consent order request denied. Well, it was denied — In the footnote? In the footnote, along with other pending motions as moved. Was it denied in the colloquy that took place before the judge? No. In the colloquy, it wasn't denied. In the colloquy, during the pre-hearing conference, the judge explained that based on the — essentially, it was filed — the last version, there were three versions filed, it was kind of a massive filing. So the last version was filed essentially right before the hearing. The briefing on this last version was completed just a week before the hearing. So the judge said, you know, the ruling is not going to come before the end of the hearing. Why didn't he rule on the motion? I mean, you know, you could say it comes too late. That might be a — No, it wasn't too — Wait. That might be a legitimate ground. But just to not act on it at all seems to me rather odd. Certainly in district court, if there's a settlement or a proposed settlement or part of the case, the court acts on it. You don't postpone it until the case is over with. It was filed close to the hearing. So to rule before the end of the hearing, he explained he's not going to rule — Why is that a problem? Because then the commission has 30 days to decide whether it's a final determination. Also, complainants — The commission has 30 days to do what? The commission has 30 days to decide whether to review this I.D. If he granted this motion by the I.D., the commission has 30 days to decide whether to review it. That would bring this decision after the end of the hearing. In addition, complainants opposed this motion before the judge. Therefore, it was likely that they would file a petition for review, and that would delay things even further. The ALJ has the authority to act on that motion at any time, right? That's true. And so he could act on it before the hearing began. He could act on it during the hearing. And after the hearing, he could say, I've had a hearing, but I'm still going to grant the motion. That's true. But Commission Rule 210.21 expressed — So where do the 30 days cut in? Well, 30 days come by the rules when he makes a decision. What decision does he make that triggers the 30 days? Granting the motion by the I.D. will trigger the — He grants the motion. He has to grant it in I.D. Right. He issues an I.D. Is it just a separate I.D.? Yes. If he rules before the hearing — Let's assume that he decided to grant the request at one of those points in time you were talking about. Right. He grants it in the form of an I.D., right? Right. And then there are 30 days the Commission has to act on. Right. So now what does that have to do with what we're talking about here today? If it's done before the hearing, the hearing takes place for a week. So that brings the — No, if he does it before the hearing — Right. It was done a week before the hearing. Don't you think an ALJ who entered a consent order before the hearing wouldn't — he would enter it and then he'd wait 30 days to see if it stuck? No. He has a hearing coming immediately. He rules on the motion. Then in 30 days after the hearing, the Commission decides whether to reverse order from the judge. So what does that have to do with any — I'm confused. Because then he — because that affects the scope of the hearing. He has either to carve out the issues that he grant consent order or — But we don't know what happened here, sir. We don't know. He didn't know what — So you're — does anybody understand this 30-day argument you're making? The 30-day is the time that the Commission has to decide whether to affirm or to reverse his I.D. Right. So in between, he has to — But there was never an I.D. in this case on the consent order. Right. That's why one of the considerations that he took into account, the Commission rule permits him to proceed with the hearing if it expressly states that the filing of this motion does not state the procedure. He should have ruled on the motion. He could say, well, it's too late. If I — It was technically — Even if I grant this, you know — That's exactly what he did. He said that the filing was close to the hearing. It's not going to be before the hearing. You never answered my question. What was the rationale? For what? For denying it. He did deny it. He did deny it at that point. He denied it later. In the footnote. Because it was rendered moot. Was the request for a consent order denied, yes or no? It was. It was. Okay. So all I want to know is what was the rationale for the denial? The rationale, he made a decision based on the merits in the final termination. As a result, that mooted this motion, and that's why he denied it. Where did he say that? Where was that articulated? It was clear from the context. At that point, all that he said, all the motions that were pending — Even though he has the power to grant the request after the hearing is over, why does the conclusion of the hearing moot the request? The conclusion of the hearing did moot the request. He proceeded based on the rules. The rules permit him to proceed to the final determination without ruling on the motion. And that was expressly permitted by the rule. Rule 210.21 allows him to go to the — Okay. Is there a rule that says he cannot grant the consent after the final ID? The rule says that he can proceed with the hearing irrespective of filing this motion. It doesn't automatically state the proceeding. He can reach the stage of final determination. At that stage, he makes the decision based on the merits. That moots this motion. And as a result, he says that this motion, along with other motions — It moots it in his mind? I'm sorry? It moots the request in the mind of the ALJ? Well, his decision should be considered in the context when it was made. That's a common practice of tribunals. When the tribunal reaches the final determination stage, and there are pending motions that are getting mooted by the final determination, they can be denied as moot. And that's what she did. Why does it matter? Why does anybody care? I mean, the relief that was granted in the motion to terminate it and the relief that was granted as part of the final decision are essentially the same. Why does a group care? Well, appellant cares because they claim that it will have an effect, you know, like preclusive effect in the district litigation. You think it has a preclusive effect? We did make this evaluation. It wasn't before us. So it's their — actually, they claim they don't believe, but interveners claim that that will have preclusive effect. But we never considered that as one of the factors. So talking about — so that was the reason why he denied it. And by the way, he has discretion to manage — Well, it may be moot. This whole issue may be moot before us because it doesn't make any difference. It has no consequence. From our standpoint, it doesn't make much difference at all. Now, talking about — if I may touch upon the merits of the trademark infringement in addition to this issue. Essentially, to clarify, the commission found that only one factor weighs against the likelihood of confusion, and that's the factor which is called relation and marketing, and that's express language. With respect to other five factors, there was no such determination. In fact, the commission found the two factors, similarity of the marks and the strength of the senior mark, which are dispositive critical factors on this record, they weigh heavily in favor of likelihood of confusion. And under this court's and commission's precedent, these two factors, when they're present, they're dispositive factors. Actually, this court held that the strength of senior mark plays a dominant role in deciding this case. And the commission found, and it's not even disputed by the appellant, that these two marks were essentially virtually similar. And based on this record, there are actually — appellant fails to show, to point to a single case where these two factors are present, and yet the likelihood of confusion is not established. We also were unable to find a single case. I think we're out of time. I'm sorry? We're out of time. Okay. Thank you. Thank you. Mr. Brown? Good morning, Your Honors. So why does it make a difference whether they granted the motion to terminate or didn't grant it or granted it, failed to grant it? Who cares? So the issue that matters specifically to the parties is the issue of a res judicata. Well, so our cases say there's no res judicata, no final estoppel effect. I believe that's what the patent cases say. I have to tell you this is not the issue that I was prepared to argue in front of you. I didn't brief the issue of a res judicata below for my client, but my client's position is that there is a res judicata. Why would there be a difference between trademark and patent? Standing here right now, I can't give you an answer to that. But what I can tell you is that it's not moot here, even if you all believe that there is no difference and there will not be a res judicata effect to upholding the ITC's decision. It's still not moot here because, as I believe Judge Clevenger pointed out, the orders are different, and this court has to decide which order to enter. And so it's not moot at this point, even if it isn't going to have a practical effect in your opinion. Why? I mean, the settlement order is less favorable to you than the final order. That's correct. That's correct. With the exception of this res judicata issue, which my client believes is very important, and which obviously Swagway believes is very important as well. Okay. We'll see what happens, right? So certainly I believe that there is strong evidence, for example, of actual confusion, and that in district court we would be able to prove actual confusion, et cetera, et cetera. So it's hard to predict exactly how this will happen in the future. But I do believe that this, even if it doesn't seem like it has much impact, that that's the reason the parties care is about that argument. I want to set a little bit of context here because I think it goes to both points. In December of 2015, Swagway received a cease and desist letter from Segway. Within a month, they had created the Swagtron brand and begun branding products. By the time this investigation began in June of 2016, they were selling with the Swagtron brand, and they had moved away from the Swagway brand. Nine months later, on the eve of trials, when we first get this consent order, nine months after they've been using the Swag, after the investigation began, and they've switched to the Swagtron brand, there has never been any explanation, never, not below, not in the briefs, for why there was this delay. They were able to quickly switch over to using Swagtron and away from Swagway, but they've never said why they waited all this time. Is there some rule that someone who's challenged if they're going to bring a consent order, they have to run in and bring it the minute they get charged? Absolutely not. There's no rule. What's wrong with the delay? What the rule says is that there needs to be good cause for the ALJ to consider the matter during or after the hearing. So they complied with the rule, which requires the motion to be brought prior to the hearing. That's what the rule says. But it also says that if you're going to consider it during or after, there has to be good cause. It doesn't explain what that good cause is. There has to be good cause for a settlement? This is not a settlement. A consent order is a voluntary – there was never a settlement. Well, you didn't agree. Exactly, exactly. They came in and said, we will not use Swagway going forward, and we'll destroy her inventory, et cetera, et cetera, everything they said in the consent order. They came in, but they do have to show good cause. And ordinarily, when you have to show good cause, that includes explaining why you brought the motion out, why it should be considered during or after the hearing. And they haven't done that at any point. I also think that this circumstance goes to – So are you telling us that's the rationale for having denied the request? I think it's apparent from the circumstances that that is the rationale. I think the judge should have said – So we're supposed to make that up? Sorry? We're supposed to just assume that that's what happened? No, Your Honor. I think it's like – think about a hearsay objection. So if there's a hearsay objection made during a trial, and the judge denies the hearsay objection, and then the hearsay – that denial is brought to you, there doesn't have to be an explanation on the record from the judge why he denies every hearsay objection. It can still be briefed because it's apparent from the context what occurred, and it's apparent from the context what the basis of his ruling was. I'd submit that the same thing is true here. He explained on the record that because the motion came so late that he was going to have to conduct the hearing regardless of what he did on the motion. Now, I can see that's not a full statement of, and therefore you don't have the good cause for your motion. He didn't say that part. But I think it's apparent from the rule, which requires good cause to consider it during or after the hearing, and from the circumstances here, which include this nine-month delay when they knew all along, knew full well that they weren't using this brand. I think it's apparent from the circumstances that that was the basis for his decision. And then briefly on the trademark issue, I'd call your attention particularly to the Hand Beauty case that we cited in our briefs. How broad is the discretion of an ALJ to grant or deny a consent order? I think the ALJ has complete discretion to... Is it unfettered? I wouldn't say unfettered, because he has to follow the rules that are set forth in 21021. Has the commission ever reversed an ALJ's decision to deny a consent order? Not to my knowledge. If the discretion is entirely unfettered, why does the ALJ have to give a reason? I would think that just comes from the standard principles of the Administrative Procedures Act, that normally when you issue any decision, that decision affects the ultimate outcome. Isn't that because there's no such thing as unfettered discretion, typically? We review for abuse of discretion? Correct, abuse of discretion. If your discretion is unfettered, how can there be an abuse? That's fair. I think what's tricky is the rules lay out a number of reasons, but they don't... Other than saying that there must be good cause to consider this during or after the hearing, they don't provide specific reasons that would be used to deny it. So, for example, there's many provisions that must be complied with, and typically when these are denied, it's because one of those is not complied with. But you also don't typically have the situation where it's the eve of hearing and the motion comes so late that it can't moot any part of the hearing, it can't prevent the hearing from going forward. Normally this is very simple, right? It makes the hearing simpler, it makes there less to be argued about at the hearing, it shortens things up, it saves resources, but that's not what happened here. Okay, Mr. Brown, thank you. Mr. Sandell? Okay, as promised, if this Court is able to state that there is no res judicata effect, it is our position that this case is moot. We will note that at least below... The case is moot or the issue is moot?  The case is moot or the issue is moot? The issue is appeal, not the case is moot. The whole issue? I'm sorry? Just this one issue? Well, certainly we do not agree with the trademark ruling and it may be cited as persuasive authority even if res judicata effect... What you're saying is that if there's no res judicata effect, you withdraw that portion of your appeal that challenged the denial of the consent order. Yeah, if there's no res judicata effect... You take that issue out of the appeal, so it's just purely a trademark likelihood of confusion challenge against a final order that was entered? And it would go a long way to perhaps note in the opinion that there is no res judicata effect for what the Commission had decided there, but of course in this case, the Court rules on it, then that would be extraordinarily persuasive on that issue, but it's no longer obligated to do so. I'd also like to note that in this case, there are very unusual circumstances that evidence of actual confusion would have surfaced if the marks at issue were really confusingly similar, which powerfully counsels that the actual confusion factor, even if it's neutral, should be given great weight because the inter-readers here hired a survey research expert and presumably to conduct a survey. To this day, they have not produced a survey and to this day, the inter-readers had not denied that a survey was in fact conducted. And this, especially when considered in light of the deficiencies of the other evidence that the Commission discussed in its opinion, is far more than just a mere failure to offer survey evidence. So on these facts, it is reasonable to infer that a survey was generated and that the undisclosed survey actually indicated a lack of actual confusion. Okay. Thank you, Mr. Vandell. Thank all counsel. The case is submitted.